IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00411-RBJ

ROBERTA CHAVEZ,

      Plaintiff,

v.

ADAMS COUNTY SCHOOL DISTRICT NO. 50,

      Defendant.

---

## ORDER

---

This matter is before the Court on defendant's Motion to Dismiss, ECF No 18.  For the

reasons discussed below, the motion is denied.

## I.      FACTS

Plaintiff Roberta Chavez is a 58-year-old resident of Westminster, Colorado.  ECF No.

17 ¶ at 4.  In 1997 Ms. Chavez started working for defendant Adams County School District No.

50 (the District) as an Instructional Educational Support Professional (ESP) at the District's

Early Childhood Center in Gregory Hill Elementary School (ECC).  *Id.* at ¶ 14.  As an ESP Ms.

Chavez assisted preschool teachers with instructing classes of three- and four-year-old children.

*Id.* at ¶¶ 14, 16.

Ms. Chavez alleges that multiple coworkers and supervisors discriminated against her

because of her age and disabilities while she was working for the District.  At all times relevant

to this case Ms. Chavez weighed between 290 and 320 pounds and suffered from Major Recurrent Depression and Panic Disorder. *Id.* at ¶ 4.  Ms. Chavez first claims that Charlene Wright, the preschool teacher Ms. Chavez assisted during the 2011–2012 school year, made multiple comments regarding Ms. Chavez's weight.  In December 2011 Ms. Wright told Ms. Chavez "[y]ou don't need to sit on the floor because it is probably too hard for you to get yourself up." *Id.* at ¶ 22.  Additionally, Ms. Wright told Ms. Chavez on multiple occasions that Ms. Chavez did not eat enough to have weight issues and therefore probably had a slow metabolism. *Id.* at ¶ 23.  In March 2012, while walking children to a school bus, Ms. Chavez realized that a backpack had been forgotten and ran back inside to retrieve it. *Id.*  Ms. Wright followed Ms. Chavez and was unable to catch up to her. *Id.*  She commented that "[f]or being so big, [Ms. Chavez] sure [was] fast." *Id.*  Finally, in April 2012, Ms. Chavez expressed an interest in a position at a middle school in the District, which prompted Ms. Wright to ask Ms. Chavez  if she could "do all that walking[?]" *Id.*

Shortly thereafter ECC Assistant Principal Tami Brungard informed Ms. Chavez that she would not be assigned to Ms. Wright's classroom the following school year. *Id.* at ¶ 28.  Ms. Brungard said that Ms. Wright's class would consist entirely of three-year-old children, that three-year-old children are rambunctious, and therefore, that Ms. Chavez would need to be constantly running around and on the floor. *Id.*  On the last day of the school year Ms. Chavez complained to Ms. Brungard that her refusal to assign Ms. Chavez to that class constituted discrimination, but Ms. Brungard did not respond. *Id.* at ¶ 30.

Ms. Chavez also alleges that Ms. Wright gave false reports to school administrators about Ms. Chavez's behavior.  Ms. Wright and another ECC employee, Kate Beyer, reported to Ms.

Brungard that Ms. Chavez was required to assist Ms. Wright with students in the gym and was not doing so. *Id.* at ¶ 25. However, Ms. Chavez was not required to be in the gym with Ms. Wright and the students. *Id.* Ms. Wright also falsely reported to ECC administrators that Ms. Chavez stole school property and sent Ms. Wright a hostile text message. *Id.* at ¶¶ 26, 29.

At the end of the 2011–2012 school year Ms. Chavez asked her supervisor, Mathieu Aubuchon, if she could transfer to another school in the District or take early retirement because of the depression, anxiety, and stress she was experiencing as a result of the alleged discriminatory treatment she received at ECC. *Id.* at ¶ 32. Mr. Aubuchon told Ms. Chavez that he could not help her transfer or enter early retirement and suggested that she apply to another school district. *Id.* Ms. Chavez also told Mr. Aubuchon and Ms. Brungard about Ms. Wright's comments concerning her weight and age. *Id.* at ¶ 27. Pursuant to the District's Non-Discrimination Policy Mr. Aubuchon and Ms. Brungard were required to promptly forward the report of discrimination and harassment to the District's Compliance Officer. *Id.* at ¶ 34. However, neither of them did so. *Id.* Consequently, on June 28, 2012 Ms. Chavez filed a charge of age and disability discrimination with the United States Equal Employment Opportunity Commission (EEOC) (2012 Charge). *Id.* at ¶ 35. The District received the 2012 Charge on July 5, 2012. *Id.* at ¶ 37.

Ms. Chavez claims that the District formally disciplined her multiple times during the 2012–2013 school year in retaliation for her filing of the 2012 Charge. Specifically, she alleges that she was disciplined for exceeding her work hours in a manner inconsistent with the District's policy. According to the District's policy, ESP employees are required to comply with their assigned work hours. *Id.* at ¶ 41. Employees that work more than fifteen minutes beyond

their assigned work hours are to receive a written warning after the first violation and a Memorandum of Understanding (MOU) after the second violation. *Id.* After the third violation the District's Human Resources Office takes action. *Id.*

In October 2012 Ms. Chavez was assigned to work 37.5 hours per week. *Id.* at ¶ 38. On November 5, 2012 Ms. Chavez received an email from Ms. Brungard warning Ms. Chavez that she had exceeded her hours during the week of October 29, 2012. *Id.* at ¶ 39. A few weeks later Ms. Chavez received an MOU for the same incident. *Id.* at ¶ 40. Additionally, on March 11, 2013 Ms. Chavez received a written warning from Ms. Brungard informing Ms. Chavez that she had exceeded work hours for the week of March 4, 2013. *Id.* at ¶ 46. Once again, Ms. Chavez received a second disciplinary document, this time a "Letter of Reprimand," for the same instance of exceeding her hours. *Id.* at ¶ 47. This letter also alleged that Ms. Chavez had exceeded her assigned work hours ten times "to date." *Id.* In May 2013 Ms. Brungard informed Ms. Chavez that she was henceforth required to use an electronic time clock to keep track of her hours. *Id.* at ¶ 48. Ms. Chavez alleges that while other ESP employees also exceeded their assigned work hours in violation of the District's policy, none was similarly disciplined. *Id.*

Ms. Chavez also claims that she was forced to endure more comments about her weight during the 2012–2013 school year. In January or February 2013 Charito Landeo, the preschool teacher Ms. Chavez assisted that year, asked Ms. Chavez if she was able to get on top of her husband during sex. *Id.* at ¶ 42. Then, in March 2013 Ms. Landeo asked Ms. Chavez how she and her husband have sex. *Id.* at ¶ 44.

At the end of the 2012–2013 school year Ms. Chavez received an overall performance rating of "Unsatisfactory." *Id.* at ¶¶ 18, 20, 50. She had received a rating of "Solid Performer"

and "Superior" in years past. *Id.* She alleges that her 2012–2013 rating is a misrepresentation of her performance. *Id.* at ¶ 50. She believed this was in retaliation for her filing the 2012 Charge. On July 30, 2013 Ms. Chavez timely filed another charge of discrimination with the EEOC (2013 Charge). *Id.* at ¶ 8.

On February 13, 2014 the District notified Ms. Chavez that she was being involuntarily transferred to Hodgkins Elementary School (HES). *Id.* at ¶ 52. The District informed Ms. Chavez's local union representative that Ms. Chavez was the first of many employees to be transferred; however, no other employees were transferred. *Id.* She alleges that on Ms. Chavez's first day at HES she reported to the front office and asked where she should clock in. *Id.* at ¶ 53. The front desk employee offered to clock Ms. Chavez in and took down her ID number. *Id.* At the end of the school day Ms. Chavez clocked out using a computer in her classroom. *Id.* at ¶ 54. However, on February 28, 2014 the District placed Ms. Chavez on paid administrative leave for allegedly failing to clock in or out properly on her first day of work at HES. *Id.* at ¶ 55. Kirk Leday, the District's Chief Human Resources Officer, next informed Ms. Chavez that her employment was going to be terminated. *Id.* at ¶ 56. Consequently, on March 13, 2014 Ms. Chavez submitted a Letter of Resignation. *Id.* at ¶ 57.

On April 22, 2014 Ms. Chavez filed a third charge of discrimination with the EEOC (2014 Charge) claiming that the District had retaliated against her for filing the 2013 Charge. *Id.* at ¶ 8. Then, on December 2, 2014 Ms. Chavez received a Notice of Right to Sue for the 2012, 2013 and 2014 Charges of discrimination, giving Ms. Chavez ninety days to institute a civil action in federal court. *Id.* at ¶ 10. Accordingly, on February 27, 2015 Ms. Chavez filed her Complaint with this Court. *See* ECF No. 1. She filed her Amended Complaint, now the

operative complaint, on May 1, 2015.  *See* ECF No. 17.  Ms. Chavez alleges that the District

violated (1) the Age Discrimination in Employment Act (ADEA) when it subjected her to a

hostile work environment because of her age; (2) the Americans with Disabilities Act (ADA)

when it subjected her to a hostile work environment because of her disabilities; (3) the ADA

when it failed to reasonably accommodate her disabilities; (4) the ADEA, the ADA and Title VII

of the Civil Rights Act when it retaliated against Ms. Chavez for filing the 2012 Charge; and (5)

the ADEA, the ADA and Title VII of the Civil Rights Act when it retaliated against Ms. Chavez

for filing the 2013 Charge.  *Id.* at ¶¶ 57–76.  The District moves to dismiss all of Ms. Chavez's

claims.  *See* ECF No. 18.

## II.     STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to

state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the Court must accept the well-pleaded allegations of the complaint as true and construe

them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th

Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at

681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to

relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*,

*Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III.     ANALYSIS

### A. Hostile Work Environment Claims

The District argues that Ms. Chavez's age- and disability-based hostile work environment claims should be dismissed: (1) based on the *Faragher/Ellerth* defense; and (2) because the Complaint fails to allege facts sufficient to support these claims. For the following reasons, the Court declines to dismiss Ms. Chavez's hostile work environment claims.

### i. The *Faragher/Ellerth* Defense

The District invokes the *Faragher/Ellerth* defense. ECF No. 18 at 5. Pursuant to the Supreme Court's decisions in *Faragher* and *Ellerth*, absent a "tangible employment action," an employer may avoid liability for harassment perpetrated by its supervisor-employee if it can prove an affirmative defense by the preponderance of the evidence. *Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011) (citing and quoting *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. (internal quotations omitted). This first element "imposes two distinct requirements on an employer: (1) the employer must have exercised reasonable care to prevent [harassment] and (2) the employer must have exercised reasonable care to correct promptly any [harassment] that occurred." *Id*. at 1288.

Regarding the first element's first requirement, the mere existence of the District's anti-discrimination policy "does not constitute an adequate preventative measure[.]" *Id*. Rather, the District must also prove that it "disseminate[d] the policy." *Id*. Technically, the District has not

alleged that it disseminated its anti-discrimination policy.  But assuming without deciding that it did disseminate the policy, the Court finds that the District fails to allege the second requirement that it "exercised reasonable care to correct promptly any [harassment] that occurred." *Id.* "[I]n order to establish that [the District] took proper action to correct harassment, [it must] show that it acted reasonably promptly on [the] complaint when it was given proper notice of [the] allegations as required under its complaint procedures." *Id.* at 1290 (internal quotations omitted).  The District's duty to take corrective action was triggered when it received "proper notice of [the] harassment complaint." *Id.*  The District argues that this duty was not triggered because it did not receive proper notice of Ms. Chavez's complaints. [1]  I disagree.  The District was notified about Ms. Chavez's grievances because she filed three EEOC Complaints, and at least one (and presumably all) of her Charges were provided to the District.

Because the District has failed to allege the first element of the *Faragher/Ellerth* defense, the Court need not address the second element of the defense.  For the reasons discussed above, the Court declines to dismiss Ms. Chavez's hostile work environment claims based on the *Faragher/Ellerth* defense.

ii.    **Failure to State a Hostile Work Environment Claim**

---

[1] Specifically, defendant argues that it did not receive proper notice of Ms. Chavez's complaint because she reported her complaints to employees that "were complicit in the hostile work environment."  ECF No. 14 at 6.  However, the case the District cites in support of that argument is distinguishable from the present case.  In *Chapman* the plaintiff did not file a charge with the EEOC.  *See Chapman v. Carmike Cinemas*, 307 Fed. Appx. 164, 174 (10th Cir. 2009).

The District also claims that the Complaint fails to state an age- or disability-based hostile work environment claim.[2] ECF No. 18 at 6. To establish a hostile work environment claim, Ms. Chavez must show: "(1) that she was discriminated against because of her [age or disabilities]; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Medina v. Income Support Div.*, 413 F.3d 1131, 1134 (10th Cir. 2005). Courts determine "whether a working environment is sufficiently hostile or abusive" by "examin[ing] all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Mackenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

Ms. Chavez has alleged facts sufficient to support her age- and disability-based hostile work environment claims. First, several of Ms. Wright and Ms. Landeo's comments unequivocally referenced Ms. Chavez's age and/or disabilities. *See* ECF No. 17 at ¶¶ 23–24, 42, 44. For example, Ms. Wright stated to Ms. Chavez, "You don't eat much to have weight issues" and suggested that Ms. Chavez "probably [had] a slow metabolism." *Id.* at ¶ 23. Second, Ms. Wright's comments doubting Ms. Chavez's physical abilities, such as whether she was able to get off the floor, walk long distances, or "run[ ] around" with young children could also be

---

[2] The Court agrees with the District that Mr. Aubuchon's comment prior to the 2006–2007 school year asking a 21-year-old teacher whether working with Ms. Chavez would be like "bossing her mother around" is not sufficiently related to the other allegedly discriminatory conduct to constitute "part of the same actionable hostile work environment practice." *See Duncan v. Manager, Dept. of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (internal quotations omitted) ("a series of alleged events comprises the same hostile environment where the pre- and post-limitations period incidents involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers").

related to Ms. Chavez's age or disabilities.  *See id.* at ¶¶ 22, 27, 28.  Third, given that Ms. Wright had previously made comments explicitly relating to Ms. Chavez's age or disabilities, it is reasonable to infer that the subsequent false allegations against Ms. Chavez were similarly motivated.  *See id.* at ¶¶ 25–26, 29.

Additionally, I disagree with the District's contention that Ms. Chavez hasn't sufficiently alleged that the harassment was pervasive.  The District contends that Ms. Chavez's co-workers' acts and comments were isolated, unrelated events undertaken by different actors.  *See* ECF No. 18 at 7–8.  While a "steady barrage of opprobrious [discriminatory] comment[s]" supports a hostile work environment claim, "[c]asual comments, or [ ] sporadic conversation" does not. *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987).  However, this is not a case in which the plaintiff alleges only one or two isolated incidences of discriminatory conduct.  *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1414–15  (10th Cir. 1997) (distinguishing a case of pervasive harassment in which the plaintiff "presented evidence of [ ] six statements made . . . over her twenty-three month employment" from other Tenth Circuit cases involving only one or two incidents of harassment).  Rather, Ms. Chavez has identified at least ten incidents that could support an inference that she was discriminated against.  *See* ECF No. 17 at ¶¶ 22–29, 42, 44.  The alleged perpetrators are a handful of co-workers who worked closely together and even jointly participated in the discriminatory conduct at times.  Further, many of these incidents took place within weeks of each other and were never more than a few months apart.  Therefore, the allegations in the Complaint support the inference that the behavior

of Ms. Chavez's co-workers was sufficiently pervasive such that it altered the terms or conditions of her employment and created an abusive working environment.[3]

In sum, Ms. Chavez has alleged facts sufficient to support her age- and disability-based hostile work environment claims.

## B. Failure to Accommodate Claim

The District argues that Ms. Chavez's failure to accommodate claim should be dismissed because: (1) Ms. Chavez failed to exhaust her administrative remedies; and (2) the facts in the Complaint do not support the inference that the District failed to accommodate Ms. Chavez's disabilities. For the reasons discussed below, the Court declines to dismiss this claim.

### i. Failure to Exhaust

The District first argues that Ms. Chavez failed to exhaust her administrative remedies for her failure to accommodate claim. ECF No. 18 at 8–9. "Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). "In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Id.* The Tenth Circuit uses a two-step inquiry to assess exhaustion, which requires: (1) determining whether the plaintiff has filed a charge of discrimination with the EEOC; and (2) examining "the scope of the allegations raised in the EEOC charge." *Id.* at 1183, 1186. The second step is necessary because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Mackenzie*, 414 F.3d at 1274.

---

[3] The test for whether a hostile work environment claim exists "is a disjunctive one, requiring that the harassing conduct be sufficiently pervasive *or* sufficiently severe to alter the terms, conditions, or privileges of Plaintiff's employment." *Smith,* 129 F.3d at 1413. Therefore, the Court need not decide whether the conduct was also "severe."

Thus, "the charge must contain facts concerning the discriminatory . . . actions underlying each claim." *Jones*, 502 F.3d at 1186.  However, the Tenth Circuit "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Id*.

The District argues that the 2012 Charge "lacked any facts pertaining to a requested accommodation or the denial thereof" and thus fails to satisfy the second step of the two-step inquiry. *See Jones*, 502 F.3d at 1186; *see also E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011) ("an employer's duty to provide reasonable accommodations . . . is triggered" when an employee makes a request that gives the employer notice of "the employee's desire for accommodations for [their] disability.").  I disagree.  The 2012 Charge indicates that the District was "aware of [Ms. Chavez's] disabilities" and that it "told [Ms. Chavez] to apply at another school district."  ECF No. 18 Ex. D.  It also indicates that Ms. Chavez felt she was "being forced out of the school/[her] position."  *Id*.  The 2012 Charge reflects the allegations in the Complaint that are the basis for Ms. Chavez's failure to accommodate claim.  *See* ECF No. 17 at ¶¶ 32, 68.  Additionally, the Complaint alleges that Ms. Chavez requested that Mr. Aubuchon assist her in transferring or entering early retirement due to her disabilities.  However, Mr. Aubuchon denied her request and merely suggested that she apply to another school district. Therefore, the Court concludes that the 2012 Charge contained facts concerning the discriminatory actions underlying the failure to accommodate claim, and the scope of the subsequent EEOC investigation could reasonably be expected to include an inquiry into whether the District failed to accommodate Ms. Chavez's disabilities.  Consequently, Ms. Chavez has exhausted her administrative remedies.

### ii.    Failure to State a Claim

Alternatively, the District argues that this claim must be dismissed because the Complaint does not plausibly allege that the District failed to accommodate Ms. Chavez's disabilities by denying her request to transfer to another school or take early retirement.  *See* ECF No. 18 at 9. Under the ADA, an employer discriminates against an employee by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is . . . an employee."  *C.R. England, Inc.*, 644 F.3d at 1048; *see also* 42 U.S.C. § 12112(b)(5)(A).  The ADA's definition of "reasonable accommodation" includes "reassignment to a vacant position."  *C.R. England*, 644 F.3d at 1048; *see also* 42 U.S.C. § 12111(9)(A)–(B).  "To facilitate the reasonable accommodation, the federal regulations implementing the ADA envision an interactive process that requires participation by both parties."  *Bartee v. Michelin N. Am., Inc.,* 374 F.3d 906, 916 (10th Cir. 2004); *see also* 29 C.F.R. § 1630.2(o)(3).  However, "an employer's duty to provide reasonable accommodations [and] participate in the interactive process" is only "triggered" once an employee notifies the employer of the employee's disability and their "desire for accommodations for that disability." *C.R. England*, 644 F.3d at 1049 (internal quotations omitted).

In the present case, Ms. Chavez alleges that she provided the District with such notice when she "asked Mr. Aubuchon if she could transfer to another school in the District or take early retirement because of depression, anxiety, and stress she was experiencing as a result of [the alleged harassment] at ECC."  ECF No. 17 ¶ 32; *see also* ECF No. 21 at 7.  The District argues that this notice was deficient because Ms. Chavez did not tell Mr. Aubuchon that her

depression, anxiety and stress "rose to the level of a disability or that she was limited in any way by that disability." ECF No. 18 at 10. I disagree.

The allegations in the Complaint—that Ms. Chavez was suffering from depression, anxiety and stress—support the inference that Ms. Chavez was disabled within the meaning of the ADA. *See* 42 U.S.C. § 12102(1)(A) ("The term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities."). Furthermore, Ms. Chavez communicated that she wished to be transferred or take early retirement because of her depression, anxiety and stress, in effect notifying the District of her disabilities and desire for accommodations. Therefore, the notice was sufficient to trigger the District's duty to provide reasonable accommodations and participate in the interactive process.

The Complaint also alleges that Mr. Aubuchon did not take reasonable steps to reassign Ms. Chavez or engage in the interactive process. Mr. Aubuchon did not engage in a dialogue with Ms. Chavez to determine the precise limitations resulting from her disabilities or what positions might accommodate these limitations. Instead, he stated that he could not help Ms. Chavez and suggested that she apply to a different school district. While the District may have found that a reassignment was not reasonable after engaging in the interactive process, it was required to make a reasonable, good-faith effort to accommodate Ms. Chavez.

Contrary to the District's contention, the Court does not consider Ms. Chavez to have requested a transfer merely to avoid working with certain coworkers. *See* ECF No. 18 at 9–10. Ms. Chavez alleges to have requested a transfer because of her depression, anxiety, and stress, which happened to be caused by the treatment she was subjected to in her current work environment. The Court also disagrees with defendant's contention that its transfer of Ms.

Chavez *nearly two years* after her request undermines the allegation that it failed to accommodate her disabilities.  *See id.*; *See Albert*, 356 F.3d at 1252 (noting that if a vacant position is not currently available, an employer "must take reasonable steps to reassign" an employee to a position that "will become vacant *in the fairly immediate future*.") (internal quotations omitted) (emphasis added).  The District unilaterally chose to transfer Ms. Chavez without engaging in any interactive dialogue, and it is not clear that the new position at HES accommodated her disabilities.

Finally, the District argues that the failure to accommodate claim must be dismissed notwithstanding the District's failure to participate in the interactive process because Ms. Chavez failed to allege that a reasonable accommodation, such as a vacant position, was available.  ECF No. 18 at 10; *see also* ECF No. 24 at 3.  It is true that "[e]ven if an employer fails to fulfill its interactive obligations to help secure a reasonable accommodation, the plaintiff will not be entitled to recovery unless she can also show that a reasonable accommodation was possible." *Hannagir v. Utah Dept. of Corrections*, 587 F.3d 1255, 1265 (10th Cir. 2009) (internal quotations omitted).  However, at the motion to dismiss stage "the nature and specificity of the allegations required to state a plausible claim will vary based on context," *Pueblo of Jemez v. U.S.*, 790 F.3d 1143, 1172 (10th Cir. 2016), "requir[ing] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  Common sense dictates that Ms. Chavez's failure to accommodate claim should not be dismissed even though it fails to cite specific facts proving that a reasonable accommodation was available.  The District was, and still is, in a better position to determine what openings were available when Ms. Chavez requested to be transferred.  The District declined to share this information with Ms. Chavez when it refused

to engage in the interactive process.  Therefore, Ms. Chavez was not in a position to include specific facts in her Complaint regarding what reasonable accommodations were available.  The Court expects that discovery might lead to more information concerning this issue.

Considering the foregoing, the allegations in the Complaint support the inference that the District failed to accommodate Ms. Chavez's disabilities by denying her request to transfer to another school or take early retirement.

### C.  Retaliation Claims

Ms. Chavez alleges that the District retaliated against her for filing the 2012 Charge when it disciplined her for allegedly exceeding her assigned work hours and rated her performance "Unsatisfactory."  ECF No. 17 at ¶¶ 69–72.  She also claims that the District retaliated against her for filing the 2013 Charge when she was involuntarily transferred to a different position and constructively discharged from her employment.  ECF No. 17 ¶¶ 73–76.  The District moves to dismiss these claims, arguing that: (1) there is no causal connection between the Charges and the materially adverse actions; and (2) the Complaint fails to allege an adverse employment action in retaliation for filing the 2013 Charge. [4]  For the following reasons, the Court disagrees with the District's arguments.

### i.  Causal Connection

---

[4] The District also argues that an employer must know of an employee's protected activity in order to retaliate,  *see Jones v. United States Parcel Service, Inc*., 502 F.3d 1176, 1194–95 (10th Cir. 2007),  and that the Complaint does not indicate that Ms. Brungard, who allegedly retaliated against Ms. Chavez had any knowledge of the 2012 Charge.  *See* ECF No. 18 at ¶ 11.  The Complaint alleges that (1) Ms. Brungard is the Assistant Principal of ECC, and (2) the District was aware of the 2012 Charge and presumably the 2013 Charge as well.  Considering this, the Complaint supports the inference that Ms. Brungard, one of the chief administrators of ECC, was aware of the protected activity.

To prevail on a retaliation claim, a plaintiff must prove "that a causal connection existed between the protected activity and the materially adverse action." *Somoza v. Univ. of Denver*, 513 F.3d 1202, 1212 (10th Cir. 2008). "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal quotations omitted). If there is not "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2011). Therefore, "other evidence in the record could establish an adverse employment action taken after a lengthy period of time was still in response to the earlier, protected activity." *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

Regarding Ms. Chavez's claim of retaliation in response to the 2012 Charge, the District notes that Ms. Chavez was disciplined for exceeding her work hours and received the "unsatisfactory" performance rating at least two months after the protected action.[5] However, the Court need not decide whether the temporal proximity alone is sufficient to establish causation because other allegations in the Complaint support the inference of a causal connection. The Complaint alleges that after the 2012 Charge was filed the District began disciplining Ms. Chavez in a manner that was inconsistent with the District's policy and its

---

[5] The parties dispute whether the date that the 2012 Charge was filed or the first day of the 2012–2013 school year—and thus the first opportunity the District had to inflict retaliatory action since the filing of the 2012 Charge—should be used as a benchmark for measuring the time that elapsed before the first alleged adverse action. *See* ECF No. 18 at 12; *see also* ECF No. 21 at 10. Because other allegations in the Complaint support the inference that the retaliatory actions were in response to the protected activity regardless of whether the temporal proximity test was met, the Court need not resolve this disagreement at this juncture.

treatment of other employees who also violated the policy. For example, Ms. Chavez received a written warning and an MOU for the first incident of exceeding her work hours even though the District's policy stated that employees would receive a written warning for the first violation and an MOU for the second violation. Ms. Chavez was disciplined multiple times for a single violation again in March 2013. Additionally, other employees exceeded their assigned weekly work hours but were not disciplined for their violations. Finally, there was no apparent reason for the District to give Ms. Chavez a performance rating of "Unsatisfactory." Her ratings had been excellent in past school years and her only violations of the District's policy concerned working more than she was permitted on two occasions. *See* ECF No. 17 at ¶ 46. Therefore, the allegations in the Complaint support the inference of a causal connection between the 2012 Charge and the adverse actions, and the Court refuses to dismiss Ms. Chavez's first retaliation claim on this basis.

Regarding Ms. Chavez's claim of retaliation in response to the 2013 Charge, the District notes that the involuntary transfer and constructive discharge occurred at least six months after the protected action. Defendant argues that this does not meet the temporal proximity test. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[The Tenth Circuit has] held that a three-month period, standing alone, is insufficient to establish causation."). However, the Court finds that the other allegations in the Complaint support the inference of a causal connection between the 2013 Charge and the adverse actions. Ms. Chavez was transferred to HES against her will, and no other employees were transferred despite the District's contentions that Ms. Chavez was the first of many employees to be transferred. Ms. Chavez was also required to clock in and out due to the allegedly unfair disciplinary actions the District had taken

against her.  Ms. Chavez did clock in and out on her first day at HES but was still disciplined by

the District for failing to properly clock in or out.  Consequently, the District informed Ms.

Chavez that her employment would be terminated and Ms. Chavez was forced to resign.

Therefore, "the pattern of retaliatory conduct" that took place "after the protected action" and

"culminate[d] later in [constructive] discharge" supports the inference of a causal connection

between the 2013 Charge and the adverse actions.  *See Piercy v. Maketa*, 480 F.3d 1192, 1198

(10th Cir. 2007).  Consequently, the Court declines to dismiss Ms. Chavez's second retaliation

claim on this basis.

### ii.    Adverse Actions in Response to the 2013 Charge

The District also argues that dismissal of Ms. Chavez's claim of retaliation in response to

2013 Charge is appropriate because the Complaint has not alleged that an "adverse action" was

taken against Ms. Chavez in response to the 2013 Charge.  ECF No. 18 at 12–15.  Specifically,

the District argues that: (1) the involuntary transfer was not an adverse action; and (2) Ms.

Chavez was not constructively discharged.  I disagree.

### i.   Involuntary Transfer

In determining whether an employer's action constitutes an actionable "adverse action"

the Tenth Circuit uses a liberal, "case-by-case approach" that "examin[es] the unique factors

relevant to the situation at hand."  *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 526 (10th Cir.

1998).  However, "a mere inconvenience or an alteration of job responsibilities" does not

constitute an adverse employment action.  *Id*.  Rather, "the plaintiff must show that a reasonable

employee would have found the action materially adverse such that they might be dissuaded

from making a charge of discrimination."  *Somoza*, 513 F.3d at 1213.  Consequently, "[a]n

adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012). Thus, "reassignment of job duties is not automatically actionable" and "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position." *Id.*

Considering the present case, Ms. Chavez argues that the involuntary transfer, when considered in conjunction with the District's other adverse actions, is sufficient to constitute an actionable adverse employment action. ECF No. 21 at 12–13. The District counters that this argument is incorrect because the continuing violation theory on which it is based is only applicable to hostile work environment claims. ECF No. 24 at 4. I agree with Ms. Chavez.

The District is referring to the rule that "discrete discriminatory acts," such as "retaliatory adverse employment decision[s]," "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, the Tenth Circuit has never intimated that, once a Charge is timely filed, courts are precluded from considering other retaliatory actions when deciding whether a specific action constitutes an actionable adverse employment action. Rather, the Tenth Circuit has explicitly left open the possibility that other "allegedly retaliatory incidents" could provide evidence to support a retaliation claim. *Id.* Further, in *Stover v. Martinez*, the Tenth Circuit aggregated the allegedly retaliatory actions to determine whether the "actions constitute[d] harassment severe enough to constitute an adverse action for the purposes of a retaliation

[claim]." 382 F.3d 1064, 1075 (10th Cir. 2004).  The District's position is also contrary to the Tenth Circuit's case-by-case approach, *see Sanchez,* 164 F.3d at 526, and fails to recognize that "the significance of any given act of retaliation will often depend upon the particular circumstances," *see Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006).

Considering the circumstances alleged in the Complaint, the involuntary transfer could plausibly constitute an adverse employment action.  Ms. Chavez was the only employee that transferred to HES despite the District's indication that other employees would also be transferred.  This, along with the involuntary nature of the transfer, suggests that the transfer was not merely "a normal incident" of Ms. Chavez's employment.  *See Aquilino v. Univ. of Kan.*, 268 F.3d 930, 934 (10th Cir. 2002) (holding that the removal of an employee from a dissertation committee was not an adverse action because the removal "[was] a normal incident of [the plaintiff's] denial of tenure.").  Further, due to the transfer Ms. Chavez was required to learn HES's procedures and policies.  She did not know how to clock in and out at HES but managed to do so with the help of the front desk employee.  However, the District accused Ms. Chavez of failing to properly clock in or out on her very first day of work at HES, and it decided to terminate her employment.  Thus the involuntary transfer was the first step toward Ms. Chavez's resigning from her job.  Consequently, the transfer constitutes a significant change in employment status and is sufficient to dissuade a reasonable person from bringing a discrimination action.  Therefore, the allegations in the Complaint support the inference that the involuntary transfer constitutes an adverse employment action.

### ii.  Constructive Discharge

Constructive discharge constitutes an adverse employment action. *See Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). "A constructive discharge occurs [ ] when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Id.* at 980. A plaintiff is constructively discharged when "the employer by its discriminatory actions forced the plaintiff to choose between resignation or termination." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 860 (10th Cir. 2007); *see also Spulak v. K Mart Corp.*, 894 F.2d 1150, 1154 (10th Cir. 1990).

Here, the District told Ms. Chavez that her employment was going to be terminated. Therefore, she was faced with the choice of resigning or waiting to be fired. *See Spulak*, 894 F.3d at 1154 ("A finding of constructive discharge is supported by evidence than an employee has resigned, rather than waiting to be fired."). Nevertheless, the District argues that Ms. Chavez was not faced with such a choice because she could have challenged the alleged unjustified termination using the District's established grievance procedures. ECF No. 18 at 14–15. However, even if Ms. Chavez could have challenged the termination after-the-fact, she still would have faced the choice of either resigning or waiting to be fired. Further, the cases the District relies on for the proposition that a voluntary resignation, even if prompted by the employer's actions or a choice between "unpleasant alternatives," cannot constitute constructive discharge arise in the context of procedural due process. *See Hargray v. Hallandale*, 57 F.3d 1560, 1568 (10th Cir. 1995); *see also Parker v. Board of Regents*, 981 F.2d 1159, 1162–63 (10th Cir. 1992). In the ADEA context the Tenth Circuit has found constructive discharge when an employee "was given an ultimatum either to retire or be fired," *see Spulak,*, 894 F.2d at 1154, or "reasonably believed she was at risk of losing her job," *see Acrey v. Am. Sheep Insutry Ass'n.,*

981 F.2d 1569, 1574 (10th Cir. 1992).  Consequently, the allegations in the Complaint support the inference that Ms. Chavez was constructively discharged, which constitutes an adverse employment action.

Thus, for the foregoing reasons, the Court will not dismiss Ms. Chavez's retaliation claims.

## IV.    ORDER

For the reasons discussed above, defendant's Motion to Dismiss, ECF No. 18, is DENIED.

DATED this 31st day of March, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge