IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00411-RBJ

ROBERTA CHAVEZ,

      Plaintiff,

v.

ADAMS COUNTY SCHOOL DISTRICT NO. 50,

      Defendant.

---

# ORDER

---

This matter is before the Court on defendant's motion for summary judgment [ECF No. 28]. For the reasons discussed below, defendant's motion is granted in part and denied in part.

## FACTS

Plaintiff Roberta Chavez is a 58-year-old resident of Westminster, Colorado. ECF No. 17 at ¶ 4. In 1997 Ms. Chavez started working for defendant Adams County School District No. 50 (the District) as an Instructional Educational Support Professional (ESP) at the District's Early Childhood Center in Gregory Hill Elementary School (ECC). *Id.* at ¶ 14. As an ESP Ms. Chavez assisted teachers with the instruction of preschool classes. *Id.* at ¶¶ 14, 16.

Ms. Chavez alleges that multiple coworkers and supervisors discriminated against her because of her age and disabilities while she was working for the District. At all relevant times

Ms. Chavez weighed between 290 and 320 pounds and suffered from Major Recurrent

Depression and Panic Disorder.  *Id.* at ¶ 4; ECF No. 29-1 at 43.

<u>2011–2012 School Year</u>

Ms. Chavez claims that Charlene Wright, the preschool teacher Ms. Chavez assisted

during the 2011–2012 school year, made multiple comments regarding Ms. Chavez's weight

and/or age.  For example, she alleges that Ms. Wright made comments such as "[y]ou don't have

to sit on the floor; it might be too hard for you to get up;" and "for being so big, you sure are

fast."  ECF No. 29-1 at 35.  Additionally, Ms. Wright told Ms. Chavez that Ms. Chavez did not

eat enough to have weight issues and therefore probably had a slow metabolism.  *Id.* at 42:24–

43:1.  Furthermore, when Ms. Chavez expressed an interest in a position at a middle school in

the District, Ms. Wright asked Ms. Chavez if she could "do all that walking?"  *Id*. at 58:7–13.

Ms. Chavez also alleges that Ms. Wright gave false reports to school administrators about Ms.

Chavez's behavior.  For example, she asserts that Ms. Wright wrongfully accused her of stealing

school property and bringing her son to the school to intimidate Ms. Wright.  *Id.* at 66–69.

At the end of the 2011–2012 school year Ms. Chavez asked her supervisor, Mathieu

Aubuchon, if she could transfer to another school in the District or take early retirement.  *Id.* at

120–25.  She claims that Mr. Aubuchon told her that he could not help her and suggested that she

apply to another school district.  *Id.*  Ms. Chavez also contends that she told Mr. Aubuchon and

Ms. Brungard about Ms. Wright's comments concerning her weight and age.  *Id.* at 60.  Pursuant

to the District's Non-Discrimination Policy, Mr. Aubuchon and Ms. Brungard were required to

promptly forward reports of discrimination and harassment to the District's Compliance Officer.

ECF Nos. 28-3; 28-4.  However, neither of them did so.  On June 28, 2012 Ms. Chavez filed a

charge of age and disability discrimination with the United States Equal Employment
Opportunity Commission (EEOC) (2012 Charge).  ECF No. 28-5.  The District received the
2012 Charge on July 5, 2012.  ECF No. 29-16.

<u>2012–2013 School Year</u>

Ms. Chavez claims that the District formally disciplined her multiple times during the
2012–2013 school year in retaliation for her filing the 2012 Charge.  Specifically, she alleges
that she was disciplined for exceeding her work hours in a manner inconsistent with the
District's disciplinary policy.  According to the District's policy as of August 2012, the first time
an employee exceeded their weekly hours by more than 15 minutes she would receive a verbal
reminder, the second violation would result in a written warning, and the third violation would
result in a Memorandum of Understanding (MOU).  ECF No. 29-2 at 31:9–24.  In October 2012
Ms. Chavez was assigned to work 37.5 hours per week.  ECF No. 17 at ¶ 38.  Ms. Chavez claims
that on November 5, 2012 she received an email from Ms. Brungard warning her that she had
exceeded her hours during the week of October 29, 2012.  ECF No. 28-15.  Additionally, she
asserts that a few weeks later she received an MOU for the same incident.  ECF No. 28-16.

The District's Policy changed on January 18, 2013.  ECF No. 28-17.  It stated that an
employee would receive a written warning for her first time clock violation, an MOU for the
second violation, and a Human Resources (HR) response after three or more violations.  ECF
No. 28-17.  On March 11, 2013 Ms. Chavez received a written warning from Ms. Brungard
informing Ms. Chavez that she had exceeded work hours for the week of March 4, 2013.  ECF
No. 28-18.  Once again, Ms. Chavez received a second disciplinary document, this time a "Letter
of Reprimand" for the same instance of exceeding her hours.  ECF Nos. 28-19, 28-20.  This

letter also alleged that Ms. Chavez had exceeded her assigned work hours ten times "to date." ECF Nos. 28-19, 28-20. Ms. Chavez claims that while other ESP employees also exceeded their assigned work hours in violation of the District's policy, none were similarly disciplined. ECF Nos. 29-7 at 35, 29-5.

Ms. Chavez also claims that she endured more comments about her weight during the 2012–2013 school year. In January or February 2013 Charito Landeo, the preschool teacher Ms. Chavez assisted that year, asked Ms. Chavez if she was able to get on top of her husband during sex. ECF No. 29-1 at 48:14–20. Then, in March 2013 Ms. Landeo asked Ms. Chavez how she and her husband have sex. *Id.* Finally, Ms. Landeo commented to Ms. Chavez, "Before you got fat I bet you had a really nice booty." *Id.* at 51:14–16.

At the end of the 2012–2013 school year Ms. Chavez received an overall performance rating of "Unsatisfactory." ECF No. 29-11. She had received a rating of "Solid Performer" and "Superior" in years past. She believes that that her 2012–2013 rating is a misrepresentation of her performance and was issued in retaliation for her filing the 2012 Charge. ECF No. 29-1 at 172. On July 30, 2013 Ms. Chavez timely filed another charge of discrimination with the EEOC (2013 Charge). ECF No. 28-6.

<u>Transfer and Resignation</u>

On February 13, 2014 the District notified Ms. Chavez that she was being transferred to Hodgkins Elementary School (HES). The District contends that Ms. Chavez volunteered for the transfer, but she considers the transfer to have been involuntary. ECF No. 29-1 at 228. Ms. Chavez alleges that when she reported to the front office and asked where she should clock in on her first day at HES, the front desk employee offered to do it for her. *Id.* at 209–12. She clocked

4

out using a computer in her classroom at the end of the day. *Id.* On February 28, 2014 the

District placed Ms. Chavez on paid administrative leave for allegedly failing to clock in or out

properly on her first day of work. *Id.* at 219:8–12. She subsequently contacted her union

representatives. *Id.* She claims that the UniServ director, John Whetzel, told her that the District

intended to fire her. *Id.* at 219–220. Ms. Chavez, believing that her termination was imminent,

submitted a letter of resignation to the District. *Id.*

<u>Procedural History</u>

On April 22, 2014 Ms. Chavez filed a third charge of discrimination with the EEOC

(2014 Charge) claiming that the District had retaliated against her for filing the 2013 Charge.

ECF No. 28-12. On December 2, 2014 Ms. Chavez received a Notice of Right to Sue for the

2012, 2013, and 2014 Charges of discrimination, giving Ms. Chavez ninety days to institute a

civil action in federal court. ECF No. 17 at ¶ 10. Accordingly, on February 27, 2015 Ms.

Chavez filed her Complaint with this Court. ECF No. 1. She filed her Amended Complaint,

now the operative complaint, on May 1, 2015. *See* ECF No. 17. Ms. Chavez alleges that the

District violated (1) the Age Discrimination in Employment Act (ADEA) when it subjected her

to a hostile work environment because of her age; (2) the Americans with Disabilities Act

(ADA) when it subjected her to a hostile work environment because of her disabilities; (3) the

ADA when it failed to reasonably accommodate her disabilities; (4) the ADEA, the ADA and

Title VII of the Civil Rights Act (Title VII) when it retaliated against Ms. Chavez for filing the

2012 Charge; and (5) the ADEA, the ADA and Title VII when it retaliated against Ms. Chavez

for filing the 2013 Charge. *Id.* at ¶¶ 57–76. The District moves for summary judgment on all of

her claims. ECF No. 28.

# I.   STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (internal quotations and citations omitted). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

# II.   ANALYSIS

## A.   Hostile Work Environment Claims

Ms. Chavez asserts that her co-workers and supervisors subjected her to a hostile work environment based on her age and their perception that she was disabled because of her weight. The District argues that, as a matter of law, Ms. Chavez's age- and disability-based hostile work environment claims fail because (1) they are barred by the *Faragher/Ellerth* defense; and (2) she cannot establish the prima facie case of a hostile work environment claim. ECF No. 28 at 8–11. For the following reasons, the Court finds that there are material fact disputes that preclude judgment as a matter of law as to these claims.

### 1.   The *Faragher/Ellerth* Defense.

The District invokes the *Faragher/Ellerth* defense. ECF No. 28 at 8. Pursuant to the Supreme Court's decisions in *Faragher* and *Ellerth*, absent a "tangible employment action," an

employer may avoid liability for harassment perpetrated by its supervisor-employee if it can prove this affirmative defense by the preponderance of the evidence. *Helm v. Kansas*, 656 F.3d 1277, 1285 (10th Cir. 2011) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id*. (internal quotations omitted). This first element "imposes two distinct requirements on an employer: (1) the employer must have exercised reasonable care to prevent [harassment] and (2) the employer must have exercised reasonable care to correct promptly any [harassment] that occurred." *Id*. at 1288.

Regarding the first element's prevention requirement, the mere existence of the District's anti-discrimination policy "does not constitute an adequate preventative measure[.]" *Id*. The District must also prove that it "disseminate[d] the policy." *Id*. Here, the District had two anti-discrimination policies and procedures in place. ECF Nos. 28-3; 28-4. Technically, the District has not put forth evidence demonstrating that it disseminated its anti-discrimination policies. But assuming that it did, the Court finds that the District fails to establish the correction requirement of the first element—that it "exercised reasonable care to correct promptly any [harassment] that occurred." *Helm*, 656 F.3d at 1288. "[I]n order to establish that [the District] took proper action to correct harassment, [it must] show that it acted reasonably promptly on [the] complaint when it was given proper notice of [the] allegations as required under its complaint procedures." *Id*. at 1290 (internal quotations omitted). Thus, the District's duty to take corrective action was

7

triggered when it received "proper notice of [the] harassment complaint." *Id.* The District argues that this duty was not triggered because it did not receive proper notice of Ms. Chavez's complaints.[1] I disagree. The District received proper notice of Ms. Chavez's grievances because she filed three EEOC Complaints, and at least one (and presumably all) of her Charges were provided to the District. ECF No. 29-16.

Because the District has failed to establish the first element of the *Faragher/Ellerth* defense, the Court need not address the second element. The Court denies summary judgment on this basis.

### 2. Prima Facie Case.

The District also claims that Ms. Chavez cannot establish the prima facie case of a hostile work environment claim. ECF No. 28 at 9. To establish a hostile work environment claim, Ms. Chavez must show: "(1) that she was discriminated against because of her [age or disabilities]; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment." *Medina v. Income Support Div.*, 413 F.3d 1131, 1134 (10th Cir. 2005). The hostile work environment test is both subjective and objective, as it looks at whether the employee was offended by the work environment and whether a reasonable person would likewise be offended. *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012). Courts determine "whether a working environment is sufficiently hostile or abusive" by "examin[ing] all the circumstances, including:

---

[1] Specifically, defendant argues that it did not receive proper notice of Ms. Chavez's complaint because she reported her complaints to employees that "were complicit in the hostile environment." ECF No. 28 at 9. However, the case the District cites in support of this argument is distinguishable from the present matter. In *Chapman* the plaintiff did not file a charge with the EEOC. *See Chapman v. Carmike Cinemas*, 307 Fed. Appx. 164, 174 (10th Cir. 2009).

(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005).

Ms. Chavez has produced evidence from which a reasonable juror could conclude that she faced pervasive discriminatory comments sufficient to uphold her hostile work environment claims. First, several of Ms. Wright and Ms. Landeo's comments referenced Ms. Chavez's age and/or disabilities. During the 2011–2012 school year, Ms. Chavez claims that Ms. Wright (1) told her she did not have to sit on the floor because it would be too hard for her to get up; (2) told her she didn't eat much and must have a slow metabolism; (3) said "for being so big you sure are fast;" and (4) asked if she would be able to do all the walking associated with working in a middle school when Ms. Chavez expressed an interest in a middle school job. ECF No. 29-1 at 35, 42:24–43:1, 44:6–9, 58:7–13. Further, during the 2012–2013 school year, Ms. Landeo (1) asked Ms. Chavez if she could get on top of her husband during sex; (2) asked how Ms. Chavez and her husband have sex; and (3) commented "before you got fat I bet you had a really nice booty." *Id.* at 48:14–20, 51:14–16. Finally, given that Ms. Wright had previously made comments explicitly relating to Ms. Chavez's age or disabilities, a reasonable juror could infer that the subsequent false allegations against Ms. Chavez were similarly motivated. *Id.* at 61–68.

The District argues that this number of age- and/or disability-related offensive comments made over the course of seventeen months is insufficient as a matter of law; however, "[there] is not, and by its nature cannot be, a mathematically precise test for a hostile work environment claim." *Hernandez*, 684 F.3d at 957 (internal quotations and citation omitted). Furthermore,

"the severity and pervasiveness evaluation is particularly unsuited for summary judgment[.]" *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999). Whether the above comments are objectively offensive is "quintessentially a question of fact." *Id.* Therefore, the Court finds that Ms. Chavez's hostile work environment claims should go to the jury, and the District is not entitled to summary judgment on this basis.

## B. Failure to Accommodate Claim

Ms. Chavez alleges that the District failed to accommodate her disabilities of anxiety and depression by denying her request for a transfer to another school at the end of the 2012–2013 school year.[2] The District asserts that this claim is insufficient as a matter of law in part because Ms. Chavez fails to establish that she was disabled within the meaning of the ADA. I agree.

The ADA defines "disability" as: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1129–32 (10th Cir. 2003). Regarding the second category, "[t]o have a record of such an impairment, a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity. [T]he record-of-impairment standard is satisfied only if she actually suffered [an impairment] that substantially limited one or more of her major life activities." *Doebele*, 342 F.3d at 1132 (internal citation and quotations omitted).

---

[2] As noted above, Ms. Chavez argues that her co-workers and supervisors subjected her to a hostile work environment in part because they perceived her to be disabled due to her obesity. ECF No. 17 at 10. Whether Ms. Chavez's obesity constitutes a disability under the ADA is not at issue with respect to her failure to accommodate claim and thus will not be addressed or decided here.

Ms. Chavez claims that she has such "a record of impairment." ECF No. 29 at 14. She asserts that her depression and anxiety started in 2004. ECF No. 29-1 at 244:10–15. As a result, she took medical leaves of absence in 2010 and 2011. *Id.* at 263:19–264:23, 265:3–15. Thus, she puts forth evidence suggesting that she has a history of mental impairments. However, she fails to designate any facts which suggest that her impairments substantially limited one or more of her major life activities. This is fatal to her claim. When asked whether her depression or anxiety limited her ability to perform her job, Ms. Chavez replied "No." ECF No. 29-1 at 226. More generally, when asked whether her depression or panic disorder limited any life activities, Ms. Chavez also replied "No." *Id.* She claims in her Response that her depression and anxiety limited her ability to "sleep, concentrate, think, and communicate," however, she fails to support this assertion with evidence sufficient to overcome summary judgment. ECF No. 29 at 14.

The present case is similar to *Kourianos v. Smith's Food & Drug Centers, Inc.*, where an employee testified in her deposition that despite her anxiety and depression, she was able to care for her daughter, maintain friendships, and work as a clerk. 65 F. App'x 238 (10th Cir. 2003). The district court granted summary judgment to the employer, and the Tenth Circuit affirmed, noting that the employee's "deposition testimony conclusively establish[d] that she did not suffer a substantial limitation in any major life activity arising from her alleged depression and anxiety." *Id.* at *2. The panel noted that the employee's "counsel ha[d] offered no expert testimony that his client was unable to accurately perceive her own level of functioning. As such, it appear[ed] from the record that [the employee] was capable of self-evaluation and that she was able to accurately perceive her own level of functioning." *Id.* Likewise, Ms. Chavez's counsel has offered no evidence that she is incapable of evaluating her own abilities. Therefore,

the record, including her own testimony, demonstrates that Ms. Chavez's impairment did not

substantially limit one or more of her major life activities.  Thus, no reasonable juror could

conclude that her anxiety and depression constituted a "disability" within the meaning of the

ADA.

The District is entitled to summary judgment on Ms. Chavez's failure to accommodate

claim.  As such, the Court need not address the District's remaining arguments regarding this

claim.

## C.  Retaliation Claims

Ms. Chavez alleges that the District retaliated against her for filing the 2012 Charge when

it disciplined her for allegedly exceeding her assigned work hours.  ECF No. 17 at ¶¶ 69–72.

She also claims that the District retaliated against her for filing the 2013 Charge when she was

involuntarily transferred to a different position and constructively discharged from her job.  *Id.* at

¶¶ 73–76.  The District contends that it is entitled to summary judgment on both claims because

(1) Ms. Chavez cannot establish the prima facie case of retaliation; and (2) the District's

legitimate non-discriminatory reasons for its actions are not pretext for retaliation.  ECF No. 28

at 13–20.  I disagree with the District.  There are genuine disputes of material facts, and therefore

a jury should decide Ms. Chavez's retaliation claims.

### 1.  Prima Facie Case.

In order to sustain a retaliation claim plaintiff must show that "(1) she engaged in

protected opposition to discrimination; (2) a reasonable employee would have found the

challenged action materially adverse; and (3) a causal connection exists between the protected

activity and the materially adverse action."  *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th

12

Cir. 2006).  The District argues that Ms. Chavez cannot establish the prima facie case because (1) she was not subject to adverse employment actions; and (2) she cannot show a causal connection between the Charges and the alleged adverse actions.  ECF No. 28 at 13–17.  I disagree.

2012 Charge

Because the District does not challenge whether Ms. Chavez engaged in protected opposition, the Court starts its analysis with the second element of a retaliation claim—whether Ms. Chavez was subject to an adverse action.  In determining whether an employer's action constitutes an actionable "adverse action," the Tenth Circuit uses a liberal "case-by-case approach" that "examin[es] the unique factors relevant to the situation at hand." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998).  An employer's action is adverse if it might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *McGowan*, 472 F.3d at 742.  Therefore, "[a]n adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012) (internal citation and quotations omitted).  Further, "[r]eassignment of job duties is not automatically actionable[,]" and "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position[.]" *Id.*

Ms. Chavez puts forth sufficient evidence showing that she was subject to an adverse employment action in retaliation for the 2012 Charge.  She claims that after she filed the 2012

Charge, she received three written warnings, two MOUs, two letters of reprimand, and an unsatisfactory evaluation.  ECF Nos. 28-5, 28-7, 28-15, 28-23, 28-16, 28-18, 28-19, 28-10, 28-21.  She alleges that these disciplinary documents were steps in the District's series of actions against her which eventually led to her constructive discharge.  Taken together, these disciplinary actions are sufficient to constitute an adverse employment action.  *See Stover v. Martinez*, 382 F.3d 1064, 1071 (10th Cir. 2004) (a series of allegedly adverse actions can be analyzed in the aggregate to determine whether, taken together, they amount to an adverse employment action).  Notably, the second letter of reprimand states that "[f]ailure to comply with these directives will result in further disciplinary action up to and including termination."  ECF No. 28-20.  A jury could conclude that this series of reprimands constitutes a "significant change in employment status" because the District issued them as part of its plan to eventually terminate Ms. Chavez.

Additionally, a plaintiff must establish "that a causal connection existed between the protected activity and the materially adverse action."  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).  "A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal quotations omitted).  If there is not "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).  Therefore, "[o]ther evidence in the record could establish an adverse employment action taken

after a lengthy period of time was still in response to the earlier, protected activity[.]" *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

Here, a reasonable juror could find a causal connection between Ms. Chavez's filing of the 2012 Charge and the District's subsequent disciplinary actions.  The parties dispute which date should be used as a benchmark for measuring the time that elapsed before the first alleged adverse action.  *Compare* ECF No. 28 at 17 *with* ECF No. 29 at 16.  Plaintiff argues that the timeline should begin on the first day of the 2012–2013 school year as that date was the first opportunity the District had to inflict retaliatory action since the filing of the 2012 Charge. Alternatively, the District asserts that the timeline should begin on the day it received the 2012 Charge—July 5, 2012.  Consequently, the District argues that the four-month delay between the date the District received the 2012 Charge and the first alleged retaliatory action undermines any inference of retaliation.  However, the Court need not decide whether temporal proximity alone is sufficient to establish causation because Ms. Chavez points to other evidence in the record supporting the inference of causation.  First, Ms. Chavez claims that she was reprimanded more often and more severely for allegedly exceeding her weekly work hours and forgetting to clock in or out compared to other ECC employees who violated the same rules.  ECF Nos. 29-5, 29-6, 29-7.  Second, Ms. Chavez alleges that the District disciplined her in a manner that was inconsistent with its own policy.  ECF Nos. 28-17, 28-18, 28-19, 28-20.  For example, Ms. Chavez was disciplined multiple times for a single time clock violation.  ECF Nos. 28-17, 28-18, 28-19, 28-20.  This evidence supports the inference that the District took these disciplinary actions because of a desire for retaliation rather than in response to Ms. Chavez's time clock violations.

In sum, Ms. Chavez puts forth evidence sufficient to establish a prima facie case of retaliation with respect to the 2012 Charge.

### 2013 Charge

Additionally, Ms. Chavez puts forth sufficient evidence showing that she was subject to an adverse employment action when she was constructively discharged in response to the 2013 Charge. It is undisputed that a constructive discharge constitutes an adverse employment action. *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 979 (10th Cir. 2008). A plaintiff is constructively discharged when "the employer by its discriminatory actions forced the plaintiff to choose between resignation or termination." *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 860 (10th Cir. 2007).

A reasonable juror could conclude that Ms. Chavez was constructively discharged. Ms. Chavez claims that after she was placed on administrative leave on February 28, 2014, she contacted her union representatives. ECF No. 29-1 at 219. She asserts that the UniServ director, John Whetzel, told her that the District intended to fire her. *Id.* at 219–220. Ms. Chavez, believing that her termination was imminent, submitted a letter of resignation to the District. *Id.* The District argues that Ms. Chavez could have challenged the termination through an appeal to the Board of Education, and thus she was not faced with a choice between resigning or being fired. ECF Nos. 28 at 16; 28-13. I disagree. The District does not contend that Ms. Chavez was presented with a third choice—a dispute resolution process—*prior* to being terminated. Thus, even if Ms. Chavez could have challenged the termination after the fact, she still would have faced the initial choice of either "resignation or termination" equivalent to a constructive discharge. *Hall*, 476 F.3d at 860.

16

Furthermore, Ms. Chavez designates specific facts from which a reasonable juror could find a causal connection between her filing of the 2013 Charge and her constructive discharge. Again, the District argues that the tenuous temporal proximity means that Ms. Chavez's claim must fail.  However, Ms. Chavez points to other evidence that supports the inference of a causal connection.  For example, the District's Chief HR Officer Kirk LeDay stated that the District did not "just transfer employees" but that employees were "free to apply to any position that becomes available."  ECF No. 29-7 at 19:3–6.  Yet Ms. Chavez was involuntarily transferred to HES in February 2014 without having applied for the job.  ECF No. 29-1 at 195–196.  Notably, Mr. Aubuchon, one of the alleged discriminators and retaliators in this case, made the decision to transfer Ms. Chavez, not Mr. LeDay, the individual in charge of HR.  ECF No. 29-7 at 36.  Then, on her first day at HES, Ms. Chavez asked another individual to clock her in because she was not sure how to clock in at the new school.  At the end of the day she clocked herself out using the computer in the classroom.  The District determined that Ms. Chavez had violated the time clock rules, and she was put on administrative leave and allegedly constructively terminated.  Taken together, "the pattern of retaliatory conduct" that took place after the protected action and "culminate[d] later in [constructive] discharge" supports the inference of a causal connection between the 2013 Charge and the adverse actions.  *Piercy*, 480 F.3d at 1199.

In sum, a reasonable juror could find that the District constructively discharged Ms. Chavez in retaliation for the 2013 Charge.

**2. Legitimate Non-Discriminatory Reasons and Pretext.**

The District asserts that it has "legitimate non-discriminatory reasons for [Ms. Chavez's] disciplinary actions, evaluation, and transfer to [HES]."  ECF No. 28 at 18.  The District claims

that it (1) disciplined Ms. Chavez because of her numerous time clock violations; (2) gave her a

negative evaluation due to her conflicts with Ms. Wright and Ms. Landeo as well as her time

clock violations; and (3) transferred her to HES because HES had a vacancy, and the District

believed that Ms. Chavez would be more productive working with someone else.  *Id.* at 18–19.

Ms. Chavez argues that the District's justifications for its actions are pretext for retaliation.  ECF

No. 29 at 20.  The Court finds that Ms. Chavez has put forth sufficient evidence of pretext to

survive summary judgment.

Because the District articulated legitimate, non-discriminatory reasons for its disciplinary

actions, negative evaluation, and transfer of Ms. Chavez, the burden shifts back to Ms. Chavez to

show that the District's explanation for its actions is pretext for retaliation.  The Tenth Circuit

has recognized that "[p]retext can be shown in a variety of ways, and there is no one specific

mode of evidence required to establish the discriminatory inference." *Conroy v. Vilsack*, 707

F.3d 1163, 1172 (10th Cir. 2013) (internal quotations and citation omitted).  An employee

generally establishes pretext "'by showing the [employer's] proffered non-discriminatory

explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational

factfinder could conclude [they are] unworthy of belief.'" *Id.* (citing *E.E.O.C. v. C.R. England,

Inc.*, 644 F.3d 1028, 1038–39 (10th Cir. 2011)).  "The employer is entitled to summary judgment

if the employee 'could not offer evidence tending to show the defendant's innocent explanation

for his employment decision was false.'" *Trujillo v. Univ. of Colorado Health Scis. Ctr.*, 157

F.3d 1211, 1215 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 n.14 (10th

Cir.1995)).

Ms. Chavez claims that the District's inconsistent administration of its discipline policies could lead a reasonable factfinder to conclude that the District's actions were retaliatory and its justifications for those actions are mere pretext. ECF No. 29 at 20. First, as discussed above, Ms. Chavez contends that she was reprimanded more often and more severely than her colleagues for similar alleged violations. *Id.* For example, more than ten other ECC employees failed to clock in or out at some point during the 2011–2012 school year. ECF Nos. 29-5, 29-6. However, the other employees were not disciplined as severely as Ms. Chavez. ECF Nos. 29-7 at 35, 29-5. Second, Ms. Chavez argues that the District would discipline her multiple times for a single time clock violation contrary to its policy. ECF No. 29 at 20. For example, as of January 18, 2013, the District's policy stated that employees would receive a written warning for their first time clock violation, an MOU for the second violation, and an HR response after three or more violations. ECF No. 28-17. Ms. Chavez exceeded her weekly hours by more than fifteen minutes the week of March 4, 2013. ECF No. 28-18. As a result, she received a written warning on March 11, 2013; a Letter of Reprimand on March 19, 2013; and an Amended Letter of Reprimand on May 3, 2013 all relating to her time clock violation the week of March 4, 2013. *Id.*; ECF Nos. 28-19, 28-20. Third, Ms. Chavez contends that the District's severe disciplinary response to her first time clock violation at HES creates a triable issue as to whether it's alleged legitimate reason of its actions are pretextual. ECF No. 29 at 20. I agree. A jury could find that the District responded disproportionately when Ms. Chavez struggled to clock in on her first day at HES and the District put her on administrative leave and then planned to terminate her.

For the foregoing reasons, the Court finds that a reasonable juror could conclude that the District's justifications for its actions are pretextual.  As such, the District is not entitled to summary judgment on this basis.

### III.   ORDER

For the reasons stated above, defendant's motion for summary judgment [ECF No. 28] is GRANTED IN PART and DENIED IN PART.  It is granted as to plaintiff's failure to accommodate claim—Claim Three—and denied as to plaintiff's hostile work environment and retaliation claims—Claims One, Two, Four, and Five.

DATED this 12th day of April, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

20